FILED

JAN 12 2017

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KHALIL ZAGHIAN, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　Plaintiff,<br><br>　and<br><br>MIKE HERNANDEZ,<br><br>　　　　　Plaintiff-Appellant,<br><br>　v.<br><br>BRIAN J. FARRELL; PAUL J. PUCINO,<br><br>　　　　　Defendants-Appellees. | No.   15-55335<br><br>D.C. No.<br>2:12-cv-05227-R-JEM<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Argued and Submitted December 5, 2016
Pasadena, California

Before:  REINHARDT, W. FLETCHER, and PAEZ, Circuit Judges.

---

　　* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

In this securities fraud class action, Plaintiff Mike Hernandez ("Hernandez") appeals the dismissal of his claims against Brian J. Farrell and Paul J. Pucino (collectively, "Defendants") under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934. Defendant Farrell was Executive Chairman, Chief Executive Officer, and President of THQ, Inc. ("THQ"), a videogame software and hardware company that is now bankrupt. Defendant Pucino was Chief Financial Officer and Executive Vice President of THQ. In the First Amended Complaint, Hernandez alleges that in the months leading up to THQ's release of a videogame device called the "uDraw" for Sony PlayStation3 ("PS3") and Microsoft Xbox 360 ("Xbox 360"), Defendants knowingly misrepresented that the uDraw would be successful among users of those consoles.

The district court granted Defendants' motion to dismiss for failure to state a claim. We review the dismissal de novo. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016).

**1.** Defendants argue that their forward-looking statements are protected under the Private Securities Litigation Reform Act ("PSLRA") safe harbor on two grounds: the providing of meaningful cautionary language, and a lack of actual knowledge that the statements were false. *See* 15 U.S.C. § 78u-5(c). As to the first ground, to be "meaningful," the cautionary language must have "identif[ied]

2

important factors that could cause actual results to differ materially from those in the forward-looking statement[.]" 15 U.S.C. § 78u-5(c)(1)(A)(i). The cautionary language also must have consisted of non-boilerplate warnings that were tailored to the forward-looking statements. *See* H.R. REP. NO. 104-369, 1995 U.S.C.C.A.N. 730, 742.

**2.** In contrast to cases in which we have applied the safe harbor, Defendants' cautionary language did not sufficiently address the harm that resulted. *Compare with In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010) ("Cutera affirmatively warned that its ability to compete and perform in the industry depended on the ability of its sales force to sell products to new customers and upgraded products to current customers, and that failure to attract and retain sales and marketing personnel would materially harm its ability to compete effectively and grow its business."); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1056 (9th Cir. 2014) ("The report warned that an economic downturn 'may have significant impact on the ability of our customers to secure funding to buy our products or might cause purchasing decisions to be delayed, which may result in decreased revenues and also allow our competitors additional time to develop products that may have a competitive edge, making future sales of our products more difficult.'") (alteration and brackets omitted).

Indeed, Hernandez alleges that Defendants were aware—as a result of feedback from a senior vice president and an independent study that THQ commissioned—that the uDraw would likely fail because PS3 and Xbox 360 "hardcore gamers" were uninterested in child-focused games. Defendants, with such knowledge, did not disclose that risk. Instead, their most relevant risk disclosure warned of the uDraw's potential failure to "achieve . . . sales expectations[.]" Read in context, however, that boilerplate warning pertained to a discussion regarding potential product defects and supply chain disruption, neither of which occurred in this instance. Without an evidentiary record, we cannot discern whether those risks were sufficiently "important" to warrant application of the safe harbor. *See* 15 U.S.C. § 78u-5(c)(1)(A)(i).

**3.** Nor does Defendants' alternative basis for invoking the safe harbor fare any better. "[S]tatements fall outside the safe harbor if the plaintiff can allege facts that would create a strong inference that the defendants made the forecast(s) at issue with 'actual knowledge . . . that the statement was false or misleading.'" *In re Cutera*, 610 F.3d at 1112 (quoting 15 U.S.C. § 78u-5(c)(1)(B)(i)). Here, Hernandez alleges with particularized facts that Defendants were involved in crafting the uDraw sales forecasts, and that those forecasts were built to

4

accommodate a desired but unachievable financial outcome.[1] Hernandez further alleges that Defendants knew of reliable information indicating that the uDraw was unlikely to succeed among PS3 and Xbox 360 users. These factual allegations raise a strong inference that Defendants knew their uDraw projections were false or misleading.

4. In the absence of the safe harbor, Defendants argue that the statements were immaterial puffery, and that Hernandez failed to adequately plead scienter. As to whether the statements were immaterial puffery, the alleged misrepresentations did not vaguely describe THQ's financial health, but instead addressed a particular product and the anticipated profitability of that product. *See In re Cutera*, 610 F.3d at 1111; *Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606 (9th Cir. 2014). Accordingly, the statements were material.

5. As to scienter, under the PSLRA a plaintiff must "allege sufficiently particular facts to demonstrate a strong inference of scienter—a mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness[.]" *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705 (9th Cir.

---

[1] To the extent Hernandez's allegations rely on confidential witnesses, the allegations are sufficiently particular "to support the probability that a person in the position occupied by [the confidential witness] would possess the information alleged." *Zucco Partners, LLC v. Digimar Corp.*, 552 F.3d 981, 995 (9th Cir. 2009).

2016) (citations and internal quotation marks omitted). "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Once Defendants made statements reflecting confidence that the uDraw would succeed in the PS3 and Xbox 360 markets, "they were bound to do so in a manner that wouldn't mislead investors as to potentially negative information within their possession." *Schueneman*, 840 F.3d at 707-08 (brackets and internal quotation marks omitted). In turn, Defendants' "failure to inform the market about the risk" that PS3 and Xbox 360 users would be uninterested in the uDraw raises a strong inference of scienter. *Id.* at 708.

6. The district court order dismissing Hernandez's claim under § 10(b) must therefore be reversed. "[B]ecause we reverse the district court and hold that [Hernandez] has sufficiently pleaded . . . his section 10(b) claim, we similarly reverse, without analysis, the district court's dismissal of the section 20(a) claim." *Id.* at 704 n.6.

**REVERSED and REMANDED.**