**LEVI & KORSINSKY LLP**
NICHOLAS I. PORRITT
ADAM M. APTON
ADAM C. MCCALL
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
nporrit@zlk.com
aapton@zlk.com
amccall@zlk.com

*Attorneys for Lead Plaintiff Mike Hernandez*
*and Lead Counsel for Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| KHALIL ZAGHIAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> THQ INC., BRIAN J. FARRELL, and PAUL J. PUCINO, <br><br> Defendants. | Case No. 2:12-cv-05227 MLR JEM <br><br> **NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION OF LEAD PLAINTIFF FOR AN ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND DIRECTING DISSEMINATION OF NOTICE TO THE CLASS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **Date:      June 5, 2017** <br> **Time:      10:00 a.m.** <br> **Room:    Courtroom 880, 8th Floor** <br> **Judge:    Hon. Manuel L. Real** |

## NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION

PLEASE TAKE NOTICE that Lead Plaintiff Michael Hernandez, by his counsel, hereby move this Court pursuant to Federal Rule of Civil Procedure 23(e) for an order: (1) granting preliminary approval of the Stipulation of Settlement ("Stipulation") and (2) directing dissemination of notice to the Class. The Motion is set for hearing at 10:00 a.m. on June 5, 2017, in the courtroom of the Honorable Manuel L. Real located in the Roybal Federal Building and U.S. Courthouse, 255 East Temple Street, Los Angeles, CA 90012,  Courtroom 880, 8th Floor.  Defendants have reviewed this Notice of Motion, Motion, and the accompanying Memorandum of Points and Authorities in Support thereof and have indicated that they do not intend to oppose this Motion.

The Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities in Support thereof; the Stipulation and the exhibits filed therewith; all other pleadings and papers filed in this action; and such other matters as may be presented to the Court before or at the time of the hearing.

## STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Stipulation should be preliminarily approved.

2.     Whether the proposed notice is adequate.

3.     Whether provisional certification of a settlement class under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") is appropriate.

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION .................ii

STATEMENT OF ISSUES TO BE DECIDED .........................................ii

MEMORANDUM OF POINTS AND AUTHORITIES ..............................iii

I.      INTRODUCTION.............................................................................1

II.     SUMMARY OF ACTION AND SETTLEMENT NEGOTIATIONS...........2

        A.      Lead Plaintiffs' Claims and Allegations.............................2

                1.      Overview............................................................2

                2.      Details of the Alleged Wrongdoing...........................3

        B.      Procedural History and Lead Counsel's Investigation .........3

        C.      Settlement Negotiations ..................................................5

III.    THE PROPOSED TERMS OF SETTLEMENT .........................6

        A.      Class Definition .............................................................6

        B.      Monetary Consideration and Plan of Allocation .................6

        C.      Release Provisions .........................................................8

        D.      Attorneys' Fees and Reimbursement of Expenses ..............9

        E.      The Court's Continuing Jurisdiction.................................9

IV.     PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
        APPROPRIATE ..............................................................10

        A.      The Settlement Approval Process.....................................10

        B.      The Proposed Settlement Meets the Requirements for Preliminary
                Approval.......................................................................11

                1.      Amount Offered in Settlement ...............................12

                2.      The Extent of Discovery Completed and the Stage of the
                        Proceedings........................................................12

                3.      The Proposed Settlement Resulted from Arm's Length
                        Negotiations and Did Not Involve Any Collusion .................13

V.      PROVISIONAL CERTIFICATION OF THE CLASS UNDER RULE 23
        IS APPROPRIATE ...........................................................13

        A.      The Class Members Are So Numerous that Joinder Is Impracticable 14

        B.      Common Questions of Law or Fact Exist...........................14

        C.      Lead Plaintiff's Claims Are Typical of Those of the Class...............15

        D.      Lead Plaintiff is an Adequate Representative of the Class.................16

        E.      The Requirements Of Rule 23(b)(3) Are Also Satisfied ...................17

                1.      Common Legal and Factual Questions Predominate .............17

                2.      A Class Action is the Superior Means to Adjudicate Lead
                        Plaintiff's and Members of the Class's Claims......................17

iii

VI.    THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE
       CONSTITUTIONALLY SOUND AND APPROPRIATE .......................... 18

VII.   PROPOSED SCHEDULE ............................................................. 19

VIII.  CONCLUSION ......................................................................... 20

NOTICE OF MOTION AND MOTION; MPA ISO PRELIMINARY APPROVAL
Case No. 2:12-cv-05227 MLR JEM

# TABLE OF AUTHORITIES

Cases

*Alberto v. GMRI*,
   No. Civ. 07-1895 WBS DAD, 2008 WL 4891201 (E.D. Cal. Nov. 12, 2008) ........... 10

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)…………………………………………………………… 13, 14

*Bellows v. NCO Financial Sys., Inc.*,
   No. 3:07-CV-01413-W-AJB, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008)............. 10

*Browning v. Yahoo! Inc.*,
   No., C04-01463 HRL, 2006 WL 3826714 (N. D. Cal. Dec. 27, 2006)……………….8

*General Telephone Co. of Southwest v. Falcon*,
   457 U.S. 147 (1982)…………………………………………………………… 13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ……………………………………………… passim

*In re Applied Micro Circuits Corp. Sec. Litig.*,
   No. 01-cv-0649 (KAJB), 2003 WL 25419526 (S.D. Cal. July 15, 2003) ……………. 11

*In re Cement and Concrete Antitrust Litig.*,
   817 F.2d 1435 (9th Cir. 1987), *rev'd on other grounds*, 490 U.S. 93 (1989) ………….. 15

*In re Equity Funding Corp. of Am Sec. Litig.*,
   603 F.2d 1353 (9th Cir. 1979) ……………………………………………… 15

*In re Heritage Bond Litig.*,
   No. MDL 02-ML-1475 DT, 2004 WL 1638201 (C.D. Cal. July 12, 2004)…………… 12

*In re Omnivision Tech., Inc.*,
   559 F. Supp.2d 1036 (N.D. Cal. 2008) ……………………………………… 7, 8

*Linney v. Cellular Alaska P'ship*,
   No. C-96-3008 DLJ, 1997 WL 450064 (N.D. Cal. July 18, 1997)……………………8

*Officers for Justice v. Civil Serv. Comm'n,*

    688 F.2d 615 (9th Cir. 1982)……………………………………………………… 8

*Rodriguez v. Carlson,*

    166 F.R.D. 465 (E.D. Wash. 1996) …………………………………………… 12

*Schaefer v. Overland Express Family of Funds,*

    169 F.R.D. 124 (S.D. Cal. 1996) ……………………………………………… 12

*Staton v. Boeing Co.,*

    327 F.3d 938 (9th Cir. 2003)……………………………………………………… 7

*Torrisi v. Tucson Elec. Power Co.,*

    8 F.3d 1370 (9th Cir. 1993) …………………………………………………… 15


Other Authorities

*Manual for Complex Litigation*, Third, §23.14 (West ed. 1995) ……………………………… 15


Rules

Fed. R. Civ. P. 23……………………………………………………………………… 11, 14

NOTICE OF MOTION AND MOTION; MPA ISO PRELIMINARY APPROVAL
Case No. 2:12-cv-05227 MLR JEM

## I.  **INTRODUCTION**

Lead Plaintiff Michael Hernandez ("Lead Plaintiff") respectfully submits this memorandum in support of his unopposed motion for an order preliminarily approving the proposed settlement ("Settlement") of this action embodied in the Stipulation.[1] The proposed Settlement was reached after the parties engaged in hard-fought and arm's length settlement negotiations before Robert Fairbank, Esq.  Based on a thorough understanding of the facts and the law, the parties agreed to the proposed Settlement which consists of $2,600,000 in cash.  If approved, it will fully resolve this action filed in June 2012 on behalf of a class of people who purchased or otherwise acquired common stock of THQ, Inc. ("THQ" or the "Company") during the period between May 3, 2011 and February 2, 2012, inclusive ("Class").

In determining whether preliminary approval is warranted, the sole issue before the Court is whether the proposed Settlement is within the range of what might be found to be fair, reasonable and adequate so that notice of the proposed Settlement can be given to members of the Class and a hearing scheduled to consider final settlement approval.  The Settlement clearly meets these criteria.  As discussed below, while Lead Plaintiff believes his claims are meritorious, significant issues exist with respect to liability and damages, and therefore the $2,600,000 cash fund that will be created under the parties' agreement represents a beneficial resolution of the Action and the Settlement is in the best interests of the Class.

Because all the requirements for settlement approval are met, the Court should certify the Class for settlement purposes only.  Also, because the Plan of Allocation is fair, reasonable and adequate, it should be preliminarily approved.

Finally, the Court should schedule a final approval hearing to determine whether the proposed Settlement, the Plan of Allocation, and Lead Counsel's request for attorneys' fees and reimbursement of expenses should be finally approved as fair, reasonable and adequate.

## II.   SUMMARY OF ACTION AND SETTLEMENT NEGOTIATIONS

### A.   Lead Plaintiffs' Claims and Allegations

#### 1.   Overview

Lead Plaintiff brings this action on behalf of all persons who purchased or otherwise acquired THQ common stock during the period between May 3, 2011 and February 2, 2012, inclusive (the "Class Period"). Lead Plaintiff's Consolidated Class Action Complaint for Violation of Federal Securities Laws (the "Complaint") alleges that Defendants made false and/or misleading statements concerning THQ's highly touted uDraw game. Specifically, the Amended Complaint alleges that Defendants assured investors that the market demand for the uDraw would "generate significant growth, profitability, and cash," and result in the "largest quarter" in the Company's history. However, within roughly one month of reiterating their confidence in the uDraw, Defendants lowered their expected net sales for the quarter by 25% due to weaker-than-expected uDraw sales. Following this disclosure on December 7, 2011, THQ's stock price fell $0.56 per share (approximately 38%).

By early February 2012, Defendants revealed that uDraw sales were still far weaker than represented and, in fact, they would be ceasing production and distribution of the uDraw altogether as well as taking a $30.3 million impairment charge. Following this disclosure on February 2, 2012, the

---

[1] Unless otherwise stated, capitalized terms have the same meaning as in the Stipulation.

2

company's stock price declined by $0.23 per share (approximately 30%)

### 2.     Details of the Alleged Wrongdoing

Lead Plaintiff's Complaint claims that throughout the Class Period, defendants made a number of representations as to the demand for the uDraw within the Xbox 360 and PS3 markets. These representations included statements such as: the uDraw will "generate significant growth, profitability and cash;" "growth will be driven by . . . uDraw;" the uDraw will "deliver significantly higher net sales and profitability;" the uDraw will result in the "biggest third quarter, both in revenue and earnings per share, in our company's history;" "[o]ur confidence comes from our upcoming titles . . . uDraw;" "uDraw . . . in the second half of fiscal '12 to offset our lower than expected first half net sales;" "planning for the largest quarter in our history, in terms of sales and earnings, driven by . . . uDraw;" "[k]ey titles driving our results in the quarter include . . . uDraw." The Complaint alleges that on November 10, 2011, defendants assured investors in response to an analyst question concerning uDraw's portability to Xbox 360 and PS3 that they "[knew] what works with the consumer" and that they were "using what works."

The Complaint alleges that contrary to these representations, defendants were aware of (or recklessly disregarded) a complete lack of demand for the uDraw within the Xbox 360 and PS3 markets.

Defendants have denied and continue to deny all of the claims and contentions alleged by the Lead Plaintiff in this Action.  Defendants expressly have denied and continue to vigorously deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action.

### B.     Procedural History and Lead Counsel's Investigation

On June 15, 2012 the original complaint was filed against THQ and defendants Brian J. Farrell and Paul J. Pucino (the "Defendants").   On

September 14, 2012, the Court appointed Lead Plaintiff to represent the Class, and approved Lead Plaintiff's selection of Levi & Korsinsky LLP ("Levi & Korsinsky") as Lead Counsel and The Wagner Law Firm as Liaison Counsel. Lead Plaintiff filed a First Amended Complaint ("FAC") on November 13, 2012.

Prior to filing the Complaint, Lead Counsel conducted an extensive investigation and analysis of the factual and legal issues involved in this Action both before and after the filing of the FAC.  This investigation and analysis included: (a) review and analysis of relevant filings made by THQ, with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of the defendants' public documents, conference calls and press releases; (c) review and analysis of securities analysts' reports and advisories concerning the Company; (d) interviews and discussions with confidential witnesses; and (e) information readily obtainable on the Internet.

On December 19, 2012, THQ filed a Chapter 11 petition in the United States Bankruptcy Court for the District of Delaware, Case No. 12-13398 (MJW), seeking protection under the United States Bankruptcy Code. On January 11, 2013, THQ filed a Notice of Automatic Stay Pursuant to 11 U.S.C. § 362(a). On January 14, 2013, Defendants moved to dismiss the FAC. On January 14, 2013, the Court issued an Order removing the case from the active caseload pending completion of the bankruptcy proceeding.

On August 29, 2014, Lead Plaintiff filed a Motion to Lift the Stay as to Defendants Brian J. Farrell and Paul J. Pucino. In connection with this Motion, Lead Plaintiff lodged a Notice of Voluntary Dismissal of claims against THQ, with prejudice. On October 16, 2014, the Court issued an Order Granting Lead Plaintiff's Motion to Lift the Stay and deemed filed Lead Plaintiff's previously lodged Notice of Voluntary Dismissal of THQ.

NOTICE OF MOTION AND MOTION; MPA ISO PRELIMINARY APPROVAL
Case No. 2:12-cv-05227 MLR JEM

On December 2, 2014, the Court issued an Order reassigning the case to Judge Manuel L. Real.

On December 5, 2014, Lead Plaintiff filed an Opposition to Defendants' Motion to Dismiss, and on January 9, 2015, Defendants filed their Reply. On February 4, 2015, the Court issued an Order Granting Defendants' Motion to Dismiss. On March 3, 2015, Lead Plaintiff filed his Notice of Appeal;

On January 12, 2017, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") issued a Memorandum Opinion reversing dismissal of the FAC and remanding the case back to this Court. On February 23, 2017, Defendants filed a Petition for Rehearing En Banc and Panel Rehearing ("Petition for Rehearing").

### C.  Settlement Negotiations

While the Petition for Rehearing was pending, Lead Counsel and Defendants' Counsel conducted a mediation session before Robert H. Fairbank of Phillips ADR on March 14, 2017. Counsel for all parties were present at the mediation as well as representatives and counsel from THQ's insurance carriers. The parties were able to reach a settlement at that time, and continued to work together to negotiate the Stipulation. At all times, the parties' negotiations were at arm's length and in good faith.

After reaching an agreement in principle regarding the relief to the Class, the parties began preparing the settlement documents, including the Stipulation, the class notice, the summary notice, the claim form, and the proposed orders granting final approval and entering final judgment. Over the next several weeks, the parties exchanged drafts of the settlement documents.  The parties finalized and executed the Stipulation on April 21, 2017.

III.   **THE PROPOSED TERMS OF SETTLEMENT**

A.   **Class Definition**

The Class includes all persons and entities who purchased or otherwise acquired THQ common stock during the period between May 3, 2011 and February 2, 2012, inclusive.[2]

B.   **Monetary Consideration and Plan of Allocation**

Under the terms of the proposed Settlement, the parties have agreed that Defendants' Insurer will make a cash payment of two million six-hundred thousand dollars ($2,600,000) on behalf of Defendants, as set forth in greater detail in ¶ 8 of the Stipulation.  The $2.6 million in cash will be deposited into the Settlement Fund (as defined in ¶ 1(ll) of the Stipulation) within twenty (20) calendar days following the Court's entry of the Preliminary Approval Order and the receipt by Defendants' Counsel from Lead Counsel of all required funding information and a Form W-9 providing the tax identification number for Lead Counsel.  *See* Stipulation at ¶ 8.  Any interest earned will be for the benefit of the Class.  *See id.* at ¶ 11-12.

Lead Counsel has considered the issues of liability and damages in determining an appropriate proposed Plan of Allocation.  Lead Counsel did not favor or consider the particular trading history of the Lead Plaintiff or of any other individual member of the Class in crafting this plan.

---

[2] Excluded from the Class are Defendants and each of their immediate family members, legal representatives, heirs, successors or assigns, and any entity in which any of the Defendants has or had a controlling interest. Also excluded from the Class is any Person who properly excludes himself, herself, or itself by filing a valid and timely request for exclusion in accordance with the requirements set forth in the Settlement Notice.

A copy of the Plan of Allocation is set forth in the Notice of Pendency and Proposed Settlement of Class Action, page 5, at Exhibit A-1 to the Stipulation. *See* Stipulation at Ex. A-1, p. 5. The Plan of Allocation states: For each share of THQ common stock *purchased or otherwise acquired during the Class Period*, the amount of the claim will be:

| CLAIM AMOUNT | | SOLD | | |
|---|---|---|---|---|
| | | 5/3/2011 - 12/7/2011 | 12/8/2011 - 2/2/2012 | Retained on 2/3/2012 |
| PURCHASED | 5/3/2011 - 12/7/2011 | $0.00 | $0.52 | $0.75 |
| | 12/8/2011 - 2/2/2012 | N/A | $0.00 | $0.23 |

   i.     For any shares you sold before December 8, 2011, your Recognized Claim is $0. The truth concerning Defendants' violations did not emerge until after hours on December 7, 2011, and, therefore, any loss you may have sustained is not causally related to Defendants' alleged conduct;

   ii.    For any shares you purchased after May 2, 2011 and retained on December 8, 2011 but then sold prior to February 3, 2012, then your Recognized Claim is equal to the number of these shares multiplied by the decline in THQ's stock price immediately following THQ's disclosures on December 7, 2011, or $0.52 per share;

   iii.   For any shares you purchased after December 7, 2011 and then retained through the end of the Class Period on February 2, 2012,

NOTICE OF MOTION AND MOTION; MPA ISO PRELIMINARY APPROVAL
Case No. 2:12-cv-05227 MLR JEM

then your Recognized Claim is equal to the number of these shares multiplied by the decline in THQ's stock price immediately following THQ's disclosures on February 2, 2012, or $0.23 per share;

iv.    For any shares you purchased between May 3, 2011 and December 7, 2011, and retained through the end of the Class Period on February 2, 2012, then your Recognized Claim is equal to the number of these shares multiplied by the total decline in THQ's stock price immediately following THQ's disclosures on December 7, 2011 and February 2, 2012, or $0.75 per share;

v.    For any shares you purchased after December 7, 2011 but then sold prior to February 3, 2012, your Recognized Claim is $0 because you did not retain these shares during a time when the decline in value was causally related to Defendants' alleged conduct.

*Id.*

## C.    Release Provisions

Upon the Effective Date, as defined in ¶ 1 (m) of the Stipulation, Lead Plaintiff, and each and every Class Member shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, discharged, and dismissed all Settled Claims (including Unknown Claims) against the Released Parties, whether or not such Class Member executes and delivers a Proof of Claim and Release form, and whether or not such Class Member shares in the Settlement Fund.  Settled Claims shall mean any and all claims, rights, demands, obligations, controversies, debts, damages, losses, causes of action and liabilities of any kind or nature whatsoever (including, but not limited to, any claims for damages, restitution, rescission, interest, attorneys' fees, expert or consulting fees, and any other

costs, expenses, or liability whatsoever), whether based on federal, state, local, statutory, or common law or any other law, rule, or regulation, whether fixed or contingent, accrued, or un-accrued, liquidated or unliquidated, at law or in equity, matured or unmatured, or class or individual in nature (including Unknown Claims as defined in ¶ 1 (rr) of the Stipulation) against Defendant Releasees, based on, arising out of, relating in any way to, or in connection with both (i) the facts, events, transactions, acts, occurrences, statements, representations, misrepresentations, or omissions which were or could have been alleged in the Action, and (ii) the purchase or acquisition of THQ common stock during the Class Period.

### D.   Attorneys' Fees and Reimbursement of Expenses

Lead Counsel will apply to the Court for an award of attorneys' fees in an amount not to exceed twenty-five percent (25%) of the total Settlement Fund (or approximately $650,000). *See* Stipulation at ¶ 18-19. Lead Counsel will also apply to the Court for a reimbursement of its reasonable expenses incurred through the Action. *See id.*

### E.   The Court's Continuing Jurisdiction

If the Court grants final approval of the proposed Settlement, the parties will request that the Court enter a final judgment of dismissal. The Court will retain jurisdiction with respect to the implementation and enforcement of the terms of the Settlement, and all parties agree to submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement. *See* Stipulation at ¶ 56.

## IV.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A.   The Settlement Approval Process

Rule 23(e) requires that before a class action is dismissed or compromised, notice of the proposed dismissal or compromise must be given in the manner directed by the Court and judicial approval must be obtained.  To that end, the Court must find that the proposed settlement is "fundamentally fair, adequate, and reasonable.  *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1040 (N.D. Cal. 2008) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citations omitted)).   A settlement agreement is presumptively fair if it "was reached in arm's length negotiations, after relevant discovery had taken place." *Linney v. Cellular Alaska P'ship*, No. C-96-3008 DLJ, 1997 WL 450064, at *5 (N.D. Cal. Jul. 18, 1997).

Moreover, the Ninth Circuit has a policy favoring settlement, "particularly in class action suits." *Omnivision*, 559 F. Supp. 2d at 1041; *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (stating that "it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution.  This is especially true in complex class action litigation . . . .").  The court's inquiry into the settlement agreement is ultimately limited to the extent necessary to make a judgment that the agreement is not "the product of fraud or overreaching by, or collusion between, the negotiating parties."   *Omnivision*, 559 F.Supp. 2d at 1041(internal citations omitted).   Thus, the court "need not reach the merits of the case or form conclusions about the underlying questions of law or fact" in determining the fairness, reasonableness and adequacy of a settlement agreement. *Id.*

**B.** **The Proposed Settlement Meets the Requirements for Preliminary Approval**

At the preliminary approval stage, the Court must conduct a "prima facie review of the relief and notice" provided by the settlement agreement before the Court orders notice to be sent. *Browing v. Yahoo! Inc.*, No., C04-01463 HRL, 2006 WL 3826714, at *7 (N.D. Cal. Dec. 27, 2006). The court must find the release to be "fair and reasonable" and the notice to be "adequate." *Id.* at *7-8. Ultimately, in making a final determination of whether the proposed Settlement is fair, adequate, and reasonable, the Court will balance some or all of the following factors:

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the state of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). Consideration of these factors shows that the proposed Settlement now before the Court falls squarely within the range of reasonableness warranting notice of the proposed Settlement to members of the Class and scheduling a final approval hearing.

Lead Plaintiff believes that the case has merit and that he has evidence to establish Defendants' liability. Nevertheless, Lead Plaintiff recognizes that, were he to continue prosecution of this action, he would face substantial risks. For their part, Defendants have denied the material allegations of the Complaint and have vigorously asserted that THQ shareholders have not sustained any damages as a result of the alleged misconduct.

In view of these factors, without a settlement, Lead Plaintiff and members of the Class face a very real risk in this case that they could recover far less than the Settlement amount—or even nothing—without the Settlement.  In all events, protracted and highly complex further litigation without a reasonably predictable outcome would ensue if this case were not resolved at this time.

### 1.      Amount Offered in Settlement

As discussed above, a Settlement Fund of $2,600,000 in cash will be created under the terms of the proposed Settlement.  Given the issues Lead Plaintiff faces regarding establishing liability, loss causation, and damages, there is a substantial risk that nothing would be recovered if this case were to proceed to trial, as further indicated by the fact that the claims have already been dismissed once by the trial court.  Thus, the $2,600,000 in cash is reasonable under the circumstances.

### 2.      The Extent of Discovery Completed and the Stage of the Proceedings

The parties reached the proposed Settlement after substantial discussions and a formal mediation before Bob Fairbank, Esq.  During the mediation, Defendants provided documents to Lead Plaintiff, including internal sales projections for uDraw and the EEDAR market research report referenced in the FAC, to further the mediation discussion. Lead Counsel conducted a thorough examination regarding the impact of Defendants' alleged conduct on members of the Class and the alleged damages, and were able to act intelligently in negotiating the proposed Settlement.

### 3.      The Proposed Settlement Resulted from Arm's Length Negotiations and Did Not Involve Any Collusion

The Settlement is the result of informed, arm's length and hard-fought negotiations between Lead Counsel and Defendants' counsel overseen by Robert Fairbank, Esq.  There can be no claim of collusion here.

Moreover, counsel for each party is experienced and thoroughly familiar with the factual and legal issues.   Courts recognize that the opinion of experienced and informed counsel supporting a settlement is entitled to considerable weight.  *See Bellows v. NCO Financial Sys., Inc.*, No. 3:07-CV-01413-W-AJB, 2008 WL 5458986, at *8 (S.D. Cal. Dec. 10, 2008) (finding that "it is the considered judgment of experienced counsel that this settlement is a fair, reasonable, and adequate settlement of the litigation, which should be given great weight"); *see also Alberto v. GMRI*, No. Civ. 07-1895 WBS DAD, 2008 WL 4891201, at *10 (E.D. Cal. Nov. 12, 2008) (stating that "when approving class action settlements, the court must give considerable weight to class counsel's opinions due to counsel's familiarity with the litigation and its previous experience with class action lawsuits").

For the reasons summarized above, Lead Counsel believes, based on their experience, knowledge of the strengths and weaknesses of the case, and all other factors considered in evaluating proposed class action settlements, that the proposed Settlement is fair, reasonable, and adequate and in the best interests of the members of the Class.

## V.      PROVISIONAL CERTIFICATION OF THE CLASS UNDER RULE 23 IS APPROPRIATE

For the sole purpose of implementing the proposed Settlement, Lead Plaintiff seeks and Defendants agree to the certification of a Class defined as all persons and entities who purchased or otherwise acquired purchased or

13

otherwise acquired THQ common stock on the public market between May 3, 2011 and February 2, 2012, inclusive.  Before a class may be certified, the following requirements of Rule 23(a) must be satisfied: (a) the class is so numerous that joinder of all class members is impracticable; (b) there are questions of law or fact common to the class; (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (d) the representative parties will fairly and adequately protect the interests of the class.  *See Hanlon,* 150 F.3d at 1019.

As discussed below, certification of a settlement class is appropriate here.

### A.   The Class Members Are So Numerous that Joinder Is Impracticable

While the precise number of members of the Class is unknown, the number certainly exceeds any number considered practical for joinder.  As of November 9, 2012, prior to THQ's bankruptcy, the Company had approximately 6,856,771 shares of common stock outstanding.  Indeed, courts routinely hold that Rule 23(a)'s numerosity requirement is satisfied under similar facts.  *See In re Applied Micro Circuits Corp. Sec. Litig.*, No. 01-cv-0649 (KAJB), 2003 WL 25419526, at *8 (S.D. Cal. July 15, 2003) (finding numerosity where the company issued millions of shares and the class is presumed to have thousands of members).  From this information, one may conclude that there are likely thousands of members in the Class.  The threshold for a presumption of impracticability is thus easily met.  *See Hanlon*, 150 F.3d at 1019.

### B.   Common Questions of Law or Fact Exist

In order to maintain a class action, there must be "questions of law *or* fact common to the class . . . ."  Fed. R. Civ. P. 23(a)(2) (emphasis added).  Construed liberally like the other Rule 23 requirements, commonality does not "require all questions of law and fact to be common."  *In re Heritage Bond*

*Litig.*, No. MDL 02-ML-1475 DT, 2004 WL 1638201, at *14 (C.D. Cal. July 12, 2004) (finding that "it is not necessary that every issue of law or fact be identical"); *see also Rodriguez v. Carlson*, 166 F.R.D. 465, 472 (E.D. Wash. 1996).

This case presents numerous common questions of both law *and* fact. Here, questions of law and fact common to all members of the Class include:

(a) Whether the federal securities laws were violated by Defendants' acts as alleged in the Complaint;

(b) Whether the misstatements and omissions alleged herein were made with scienter;

(c) Whether the statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and operations and management of THQ;

(d) Whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e) Whether the prices of THQ common stock during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

(f) To what extent the members of the Class have sustained damages, and the proper measure of damages.

Accordingly, Rule 23(a)(2) is met.

### C. <u>Lead Plaintiff's Claims Are Typical of Those of the Class</u>

A plaintiff's claims will be deemed typical if "they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 128-29 (S.D. Cal. 1996) (finding that typicality was met even though defendant claimed that the vast majority of

15

shares were purchased by institutional investors rather than small investors and that plaintiff relied on oral representations of his broker).  The heart of the inquiry is whether the representative's claims and the class claims are interrelated so that class treatment is economical. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982).

Here, Lead Plaintiff's claims are similar to the claims of the other members of the Class.  Defendants' alleged course of conduct described in the Complaint uniformly affected all members of the Class, as they each allegedly suffered economic injury from the decline in market value following the corrective disclosures.  Lead Plaintiff's claims are typical of the other members of the Class because, like all other members of the Class, they allegedly were injured when the truth about the uDraw was revealed.    Thus, the typicality requirement of Rule 23(a)(3) is met.

### D.    Lead Plaintiff is an Adequate Representative of the Class

The purpose of the adequacy requirement is to "uncover conflicts of interest between named parties and the class they seek to represent."  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 594 (1997).  The factors relevant to a determination of adequacy are: (1) the absence of potential conflicts between the named plaintiff and his counsel with other class members; and (2) that counsel chosen by the representative party is qualified, experienced and able with the named plaintiff to vigorously conduct the litigation.  *See Hanlon,* 150 F.3d at 1020.

There are no apparent conflicts of interest between Lead Plaintiff and the absent members of the Class.  Indeed, Lead Plaintiff has been committed to the vigorous prosecution of this action from the outset and has reached a resolution that he believes is in the best interests of the Class.  Lead Plaintiff has shown that he is more than an adequate representative.  Moreover, the Court previously

16

1  determined that Lead Counsel, Levi & Korsinsky, is qualified to represent the

2  Class.

3       **E.**     **The Requirements Of Rule 23(b)(3) Are Also Satisfied**

4       Rule 23(b)(3) authorizes class certification where, in addition to the

5  requirements of Rule 23(a), common questions of law *or* fact predominate over

6  any individual questions and a class action is superior to other available means

7  of adjudication. *See Amchem,* 521 U.S. at 607. This case easily meets Rule

8  23(b)(3)'s requirements.

9       **1.**     **Common Legal and Factual Questions Predominate**

10       "Predominance is a test readily met in certain cases alleging . . . securities

11  fraud . . . ." *Amchem,* 521 U.S. at 625. In this securities fraud case, Defendants'

12  alleged liability arises from their conduct with respect to the Company's uDraw

13  projections. Whether Defendants' publicly disseminated releases and statements

14  during the Class Period omitted and/or misrepresented material facts is the

15  central issue in this case and predominates over any individual issue that

16  theoretically might arise. *See Hanlon*, 150 F.3d at 1022 (stating that Rule

17  23(b)(3) is satisfied where "[a] common nucleus of facts and potential legal

18  remedies dominates [the] litigation"). Thus, the predominance requirement is

19  satisfied here.

20       **2.**     **A Class Action is the Superior Means to Adjudicate**

21                        **Lead Plaintiff's and Members of the Class's Claims**

22       The second prong of Rule 23(b)(3) is essentially satisfied by the proposed

23  Settlement itself. As explained in *Amchem*, "[c]onfronted with a request for

24  settlement-only class certification, a district court need not inquire whether the

25  case, if tried, would present intractable management problems for the proposal is

26  that there be no trial." 521 U.S. at 620 (citing Fed. R. Civ. P. 23(b)(3)(D)).

27  Thus, any manageability problems that may have existed here—and Lead

28

Plaintiff knows of none—are eliminated by the Settlement.  In any event, given the alternatives, *e.g.*, unnecessarily burdening the judiciary with numerous actions involving relatively small amounts of damages, which "would prove uneconomic for potential plaintiffs" where "litigation costs would dwarf potential recovery," resolving this case on a class-wide basis is clearly preferable.  *Hanlon*, 150 F.3d at 1023.

## VI.  THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE CONSTITUTIONALLY SOUND AND APPROPRIATE

Preliminary approval of the proposed Settlement permits notice to be given to the members of the Class of a hearing on final settlement approval, at which they and the settling parties may be heard with respect to final approval. *See Manual for Complex Litigation*, Third, §23.14 (West ed. 1995).  Here, the parties propose that notice be given principally by U.S. mail.  *See* Stipulation at ¶ 17.  In addition, the Stipulation provides for publication of a summary notice, which will be published on www.zlk.com and in the national edition of *Investor's Business Daily.  See id*.

The proposed form of mailed notice (Exhibit A-1 to the Stipulation), provides the following details of the Stipulation to prospective members of the Class in a fair, concise and neutral way: (1) the existence of and their rights with respect to the class action, including the requirement for timely opting out of the Class; and (2) the Settlement with Defendants and their rights with respect to the Settlement.   The proposed form of summary notice (Exhibit A-3 to the Stipulation), provides essential information about the Action and the Settlement, including an address for potential class members to write in order to obtain the full long form of notice.

The means and forms of notice proposed here constitute valid and sufficient notice to the Class, the best notice practicable under the

18

circumstances, and comply fully with the requirements of Rule 23 and due process.  *See e.g.*, *In re Cement and Concrete Antitrust Litig.*, 817 F.2d 1435, 1440 (9th Cir. 1987), *rev'd on other grounds*, 490 U.S. 93 (1989) (stating that "notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard'") (internal citation omitted); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993); *In re Equity Funding Corp. of Am Sec. Litig.*, 603 F.2d 1353, 1361 (9th Cir. 1979) (directing that class notice must "present a fair recital of the subject matter and proposed terms" and provide "an opportunity to be hear to all class members") (internal citation omitted); *see also Manual Third* § 30.41 (approving use of combined class notice and settlement notice where appropriate).

## VII.   <u>PROPOSED SCHEDULE</u>

Lead Plaintiffs respectfully request the Court schedule the dates required by, and set forth in the [Proposed] Order Granting Preliminary Approval of Settlement and Directing Dissemination of Notice to the Class, which Lead Counsel will present to the Court at the hearing on June 5, 2017.  Specifically, Lead Plaintiff requests the Court schedule the following dates:

| | |
|---|---|
| | Last day to complete mailing of Notice and Proof of Claim Form and to publish Summary Notice |
| | Last day for filing and serving papers in support of final approval of the proposed Settlement, and the applications for Fee and Expense Awards. (The deadline shall be no less than 21 days prior to the Final Approval Hearing.) |
| | Last day for Class Members to submit comments in support of or in |

NOTICE OF MOTION AND MOTION; MPA ISO PRELIMINARY APPROVAL
Case No. 2:12-cv-05227 MLR JEM

| |
|---|
| opposition to the proposed Settlement, and the applications for Fee and Expense Awards.<br>(The deadline shall be no less than 10 business days prior to the Final Approval Hearing.) |
| Last day for potential Class Members to request exclusion from the Class.<br>(The deadline shall be no less than 10 business days prior to the Final Approval Hearing.) |
| Last day for filing and serving papers in response to objections to the proposed Settlement, and the applications for Fee and Expense Awards.<br>(The deadline shall be no less than 5 business days prior to the Final Approval Hearing.) |
| Final Approval Hearing |

## VIII.   CONCLUSION

The proposed Settlement is presumptively fair and presents no obvious deficiencies.   Accordingly, the Court should grant preliminary approval of the proposed Settlement and enter an order substantially in the form of the accompanying [Proposed] Order Granting Preliminary Approval of Settlement and Directing Dissemination of Notice to Class.

DATED: May 3, 2017          **LEVI & KORSINSKY LLP**

By: /s/ Adam C. McCall
Adam C. McCall (SBN: 302130)
**LEVI AND KORSINSKY LLP**
445 South Figueroa Street 31st Floor
Los Angeles, Ca 90071
213-985-7290
Fax: 202-333-2121
Email: amccall@zlk.com

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-and-

Nicholas I. Porritt
Adam M. Apton
**LEVI & KORSINSKY LLP**
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567

*Attorneys for Lead Plaintiff Mike
Hernandez and Lead Counsel for Class*

NOTICE OF MOTION AND MOTION; MPA ISO PRELIMINARY APPROVAL
Case No. 2:12-cv-05227 MLR JEM